WM. W. BAILEY, ET AL., APPELLANT, VS. DANIEL A. FINLAYSON, APPELLEE.

1. A marriage contract whereby the intended wife conveys her property to the intended husband, in trust for herself during life and to any child or children of the marriage after her death, and if there be no child or children, to her mother for life, and then to her brother and sisters, if made under the undue influence of the mother of the intended wife, said mother being one of the contingent beneficiaries of the trust, may be set aside on the application of such intended wife, or her heirs, and while, after her death, the husband, as trustee, may not impeach the contract for invalidity, he may do so in his character of heir under our statute.

2. If a marriage contract contains a clause intended as a power of revocation, though inartificially expressed, and the evidence clearly shows that it was so intended, the clause will be regarded as conferring the power, though the language used may seem repugnant thereto. Parol testimony is admissable in such case to remove the seeming repugnancy, and reconcile the different

parts of the contract, if in its construction the language can be reasonably made to conform to the intention.

3. The evidence in this case shows undue influence of the mother over her daughter in the making of the contract ; and it also shows that the words therein, "it is further understood that nothing herein contained shall interfere with  *  *  *  the disposition (of the property) should the said party of the second part desire to sell or convey any part thereof, or to dispose of it by last will and testament," were intended as a power of revocation.

4. The property conveyed by the marriage contract, being in the wife at the time of her death, whether from the invalidity of the contract, or from her exercise of the power of revocation, descended under our statute to the husband and the child of the marriage in equal parts.

Appeal from the Circuit Court for Jefferson county.

The facts of the case are stated in the opinion of the court.

Judge McClellan, of the First Circuit, sat in the place of Chief Justice Raney, who was disqualified.

*T. L. Clark and John W. Malone*, for Appellants.

On the 21st day of January, A. D. 1883, Mary B. Bailey, aged about twenty-four years, in contemplation of marriage with Daniel A. Finlayson, executed a deed by which she nominated and appointed said Daniel A. trustee of her separate estate, consisting of certain real and personal property in Jefferson county, of which she was then seized and possessed in her own right, and thereby gave, granted, conveyed and delivered said property to said Daniel A. Finlayson, his heirs and assigns forever, to have and to hold the same under his charge, control and management for her and their use, benefit and enjoyment during her life-time as provided by the laws of Florida relating to the separate property of married women, and at her decease to go to and descend to

any child or children she might leave surviving her.    There was also a limitation over in case she should die without children.    Said deed further provided that nothing therein contained should interfere with the free use and enjoyment of said property by the grantor, or with the disposition thereof should she desire to sell and convey any part thereof, or to dispose of it by last will and testament.    It also recited that said Daniel A. Finlayson made himself a party thereto in token of his approval of the same, and in acceptance of the trust therein created.    This deed was executed by Mary B. Bailey and Daniel A. Finlayson in the presence of two subscribing witnesses.    Immediately after the execution of this deed said Daniel A. and Mary B. were married.

After their marriage and on the 2d day of April, 1884, said Daniel A. and Mary B. joined in a deed to Samuel Pasco, which recites the execution of the aforesaid trust deed, the desire of Mary B. to terminate the trusts created by said deed, and to convey the property so as to relieve it from such trusts, and the desire of said Daniel A. to carry out the wishes of of his said wife, and the wishes of said Daniel A. to have such deeds executed as may be necessary in law and equity to vest the title in and to the separate property covered by said trust deed in his said wife, as if the same had never been executed, and the request of said parties that said Pasco accept said conveyance for the purpose of conveying, transferring and delivering said property to said Mary B. Finlayson as to her separate property under the laws of the State of Florida, forever freed from the further operations of the trusts of said trust deed.    And in consideration of the premises, and one dollar, they, Daniel A. and Mary B. convey, grant, bargain, sell and deliver said property to said Samuel Pasco, his heirs and assigns, to have and to hold the same for the uses and purposes aforesaid.    This deed was executed by Daniel A. and Mary B. in the presence of two

witnesses, and has appended the certificate of Andrew Denham, a Notary Public, of the separate acknowledgment of said Mary B. in the usual form.

On the same day (April 2d, 1884) Samuel Pasco, by deed conveyed the same property back to Mary B. Finlayson, her heirs and assigns forever, as her separate property and estate under the laws of the State of Florida.

On the 3d day of May, 1884, said Mary B. had born to her a male child—Bailey Finlayson, and on the following day (May 4th, 1884,) Mary B. died intestate. On the 2d day of June, 1885, the infant Bailey Finlayson also died.

On the 26th day of March, 1886, the complainants, who are the brothers and sisters of Mary B. Finlayson, and the next of kin of Bailey Finlayson on the part of his mother, filed their bill against Daniel A. Finlayson, setting up the foregoing and alleging that the property covered by the deed entered into and excuted by Daniel A. Finlayson and Mary B. Bailey before their marriage, was thereby vested in the infant, Bailey Finlayson, upon the death of his mother, Mary B., and that upon the death of Bailey Finlayson, an infant, the said property so derived from his mother, passed, under the statute of descents, to his maternal kindred, the appellants. The bill prays for a discovery and account of the real and personal property, and the rents, issues and profits thereof that remained undisposed of by sale and conveyance by said Mary B. at the time of her death, and the death of the infant Bailey Finlayson, and that said Daniel A. be decreed to transfer, convey and deliver the same to complainants, and for general relief.

On the 3d day of May, 1886, Daniel A. Finlayson answered this bill, and says:

1. That he is administrator of Mary B. Finlayson, and as such holds in his possession the real and personal property of which she died seized and possessed.

2. That Mary B. Finlayson signed the deed of June 21, 1883, against her will and consent, and at the instance of and under the influence of her mother and brother, and never intended said paper to become operative or of any effect, and she so stated in her life-time. That she was informed when she signed said paper that it provided that she should have power to cancel and revoke it at any time, and in such manner as she might determine, and that she would not have signed it had she understood that by its terms she had not such power to revoke it.

3. That said paper was never delivered to the trustee, Daniel A. Finlayson, and was without consideration.

4. That the deed of April 2d, 1884, by Daniel A. and Mary B. to Samuel Pasco, hereinbefore mentioned, vested in said Mary B., the said property freed and discharged from the trusts contained in the deed of June 21, 1883, and that upon the death of said Mary B. the said property descended to Daniel A., her husband, and to Bailey, her son, in equal proportions. It admits that the portion descending to Bailey Finlayson upon the death of said Bailey, vested in the complainants under the statute of descents.

Upon the same day his answer was filed (May 3, 1886,) Daniel A. Finlayson filed his cross-bill against the complainants, in which he alleges :

1. That the deed of June 21, 1883, was signed by Mary B. against her wishes, and she never intended to allow it to be enforced, and she instructed her attorney in drawing said paper to provide that she should have full power to revoke and cancel the same.

2. The deed of April 2d, 1884, to Pasco, and deed of same date from Pasco back to said Mary B.

3. That if Mary B. did not retain the power to revoke the paper of June 23d, 1883, by conveyance, as was done by deeds of April 2d, 1884, the omission of this power from the

paper was a mistake of its draughtsman, and the same should be reformed and corrected in that respect.

4. Prayer.   That deed of June, 21st, 1883, be so corrected and reformed as to provide that said Mary B. have power to revoke the same by conveying the property therein described to such person, and on such terms as she may determine, and that such correction take effect and have force from June 21st, 1883, and that deed of April 2d, 1884, to Pasco, and deed of same date from Pasco back to Mary B., operate to forever revoke and annul the deed of June 21st, 1883, as reformed, and to free the property therein described from the trusts attempted to be therein created.

May 21st, 1886, complainants filed general replications to defendant's answer to their bill.   And on July 21st, 1886, answered defendant's cross-bill, and—

1. Denied that Mary B. executed deed of June 21st, 1883, against her wishes, and denied that she and said Daniel A. were deceived, or any fraud or undue influence used.   That said Daniel A., when he executed said deed, was an attorney, skilled in the law, and well qualified to construe and to understand the purport of said deed, and that said Mary B. acted under advice of able counsel of her own selection, and they executed said deed deliberately and advisedly.

2. Denied that deed of April 2d, 1884, operated to cancel or revoke deed of June 21st, 1883.

3. That cross-bill fails to set up facts that entitle defendant to relief prayed, and introduced new matter proper only for an original bill, and claims the same benefit of all such matters of defence as if they had been urged by demurrer.

To this answer to the cross-bill defendant filed general replication August 16, 1886.

August 18, 1886, an examiner was appointed to take testimony on all issues raised, and on September 27th and 28th the testimony was taken and reported by the examiner.

December 4th, 1886, the case was heard at Tallahassee, and a decree was rendered dismissing the original bill at complainants' cost. From this decree the complainants have appealed, and assign as error the dismissal of said bill and the refusal of the court below to grant complainants any relief under the pleadings and testimony, and the prayer for specific and general relief.

Appellee urges as a first matter of defence that he is administrator of the estate of Mary B. Finlayson, and holds in his possession the property in controversy in his representative capacity. But his own testimony shows that he was not such administrator, and that he held the property in his personal capacity when this suit was instituted, and that he sought the appointment and qualified as administrator, after complainants' bill was filed against him. This is not a defence to the action. Nor would it be any defence even if he had qualified before the suit was commenced.

The second ground of defence set up is that Mary B. Finlayson (then Mary B. Bailey) signed the ante-nuptial deed of June 21, 1883, against her will and consent; that her signature to the same was obtained by undue influence; that she never intended it to become operative, &c. This defence, and all the allegations made and the facts related in the answer in reference thereto, are not responsive to the bill, but in avoidance of the case made by the bill, and as such are not evidence. Daniel's Chy. Prac., vol. 2, page 840, note and authorities.

The charge is that the undue influence was exerted by Mrs. Taylor, the mother of Mary B., and that she was instigated thereto by Wm. W. Bailey, one of the complainants. The testimony fails entirely to show that Wm. W. Bailey had any knowledge of, or the remotest connection with the the execution of the paper. No fraud or duress is charged. No oppression or undue influence is proven. The utmost

that the testimony shows is that the young lady on the eve of her marriage followed the counsel of her mother and prevailed on her intended husband to join with her the execution of this deed, instead of deferring to the wishes of her intended husband, and disregarding her mother's advice. Her declaration that she signed the paper against her will and never intended it to stand, made after her marriage, and in the presence of her husband, who is shown to have opposed so vehemently her execution of the paper, cannot be used by the husband, after her death, to impeach in his own interest her solemn deed made before the marriage. Dr. Taylor, in his testimony, says that Mrs. Taylor (her mother) advised her to make the marriage contract, and she willingly acted on that advice. That there was no undue influence used. That she advised her kindly, mildly and lovingly to make the contract, and to insist on Mr. Finlayson signing it, and not to marry until it was signed.

Mr. Pasco, the counsel who drew the paper, says he got his instructions from Mrs. Taylor and the young lady herself. He had three separate consultations before he finished the paper, was present when it was signed, consumed more than half a day in its preparation. He testifies to the reluctance and unwillingness of Mr. Finlayson to have the deed made, his refusal to enter into it till he carried him a note from his intended wife, the language of which was very emphatic, "You must sign." He speaks of her agitation, and her impatience to get through with these business interviews, and the wish she expressed that she had no property to be troubled about. All this is not unusual or unnatural with a girl only a few hours before her marriage and departure from her mother's house. And when we add to this the persistent opposition her intended husband was making to this arrangement of her property which she and her mother had long before determined on, is it to be won-

dered at that she was agitated, that she had been crying, that she wished she had no property to be troubled about. That she at last writes : " As you love me sign this paper and do not add anything now to my suffering, for I have gone through with enough to kill me ? " No unwillingness on her part to the execution of the paper is expressed or manifested. Mark the language of the note sent by Mr. Pasco : " I trust you fully, but cannot do as *you* say." Neither Mr. Finlayson nor his witnesses have disclosed what he had asked her to do. But from the tenor of her note it is evident that he wished her to marry him without executing the paper. This she declined, saying : " I promised mother long ago that it should be so, and cannot refuse. I will prove my love to you in some other way." Not one word about undue influence, not a whisper of signing this paper against her will, not an intimation that she desired it different, or a promise that after marriage she would arrange her property as he might desire. But that " she would show her love some other way.". Was she making this deed against her will ? Nay, verily, but against *his* will.

But even if this defense and everything mentioned in the answer in connection with it were fully proved this trust deed would not be void in favor of the trustee and against the appellants. Washburn on Real Estate, Vol. 3, Sec. 260. Fish vs. Stubbs, 30 Ala., 335. 2 Story, Eq. Jur., Sec. 700. Burt vs. Cassity, 12 Ala., 734. 19 Cal., 302. 13 Mass., 371.

The utmost that could be said of it, is that upon a proper case made and proven in a proceeding by Mary B. Finlayson in her lifetime against all the possible beneficiaries, a court of equity could have relieved her against her deed. Eaton vs. Tillinghast, 4 R. I., 276. Russell's Appeal, 75 Penn , St. 269, 289 and 290. Perry on Trusts, Sec. 201.

To this extent only do the authorities go that we have been able to find, or to which we have been cited. But this is not a proceeding by Mary B. Finlayson to be relieved against her deed. It is a proceeding by parties claiming through and under that deed to have it enforced against the trustee named in the deed. A trustee who joined in the execution of that deed, and expressly consented to all its terms, and accepted the trusts thereby created. This trustee will not be permitted to antagonize his trust, nor to set up an adverse claim. Having accepted the trust he must assume its validity and execute it, and it does not lie in his mouth to say that the deed creating the trust is void. Perry on Trusts, Sec. 43. Strong vs. Willis, 3 Fla., 124. Reid vs. Mullins, 48 Mo., 344. Benjamin vs. Gill, 45 Ga., 110.

A labored effort is made by the answer and testimony to show that the deed of June 21, 1883, was never delivered to the trustee. But he was a party to it. It was made in consideration of marriage, and the marriage was solemnized. He accepted the consideration; he signed and sealed the deed and made himself a party to it as therein expressed in token of his approval of the premises and in acceptance of the trust therein created. He afterwards joins in a deed of the trust property which recites and admits the execution of the trust deed of June 21, 1883. There was a sufficient delivery, and Daniel A. Finlayson, the trustee, is estopped from denying the delivery.

" When a party has solemnly admitted a fact by deed under his hand and seal, he is estopped, not only from disputing the deed itself, but every fact which it recites." Washburn on Real Estate, Vol. 3, 99. Stow vs. Wise, 7 Conn., 214. Green vs. Clark, 13 Vt., 158. Lajoy vs. Prium, 3 Mo. 373. Van Rensalaer vs. Kearney, 11 How., 332. Clark vs. Baker, 14 Cal., 622.

What necesary to constitute delivery.   See Souverbye vs. Arden, et al., 1 John Ch. R., 240.

The trust deed contains a provision " that nothing therein contained should interfere with the free use and enjoyment of the property by said Mary B. or with the disposition thereof should she desire to sell and convey any part thereof or dispose of it by last will and testament."   This clause was incorporated by the eminent counsel who drew the paper, after frequent interviews with Mrs. Taylor and Mary B. and Daniel A.   He certainly understood what all the parties then wanted, and to intimate that the paper he drew failed to express their wishes, is to impeach his legal learning or charge him with gross carelessness.

Acting under this provision, it seems the deeds of April 2d, 1884, were made with the intent of freeing the property of the trust created by the ante-nuptial deed.   The intent is apparent.   The legal effect of these deeds the court must determine.   It is not denied that the deed to Pasco, and the deed from Pasco back to Mary B. Finlayson, were purely voluntary and without consideration.   The trustee joins with the life-tenant in an attempt to defeat the trust he had accepted and bound himself to execute ; and to defeat the trust in his own interest, for the trustee alone must be benefited by the act that should free the property of the trust, and at the same time permit the title to remain in his wife. In such case, under the statute of descents, he would be sole heir and take all, if his wife should die without children, and a child's part, if she left children.

The power of disposition contained in this provision contemplates a sale and conveyance or transfer for value—not a voluntary conveyance—such a sale of the property as should pass the title to another ; not a pretence of conveyance, which admits on its face that its object was not to part with the ownership of the property, but merely to rid it of

the trust. The conveyance to Pasco is in trust to convey back to Mary B. free of the original trust. In this conveyance she did not pretend to part with the beneficial ownership of this property. She could not thus convey it to *herself* so as to defeat the original trust. If, even the leg a title, ever vested in Pasco, he took it as a mere volunteer, with full notice of and subject to the original trust, and when the legal title re-vested in Mary B., she held it still subject to the terms of the original trust deed, and she and Daniel A. became estopped from denying the trusts which she had created and he had accepted.

" If a trust is once perfectly created, and the relations of trusts and *cestui qui trust* is once established, it will be enforced though the settlor has destroyed the deed, or has attempted to revoke it by making a second voluntary settlement of the same property, or if the estate, by some accident, becomes re-vested in the settlor." Perry on Trusts, Sec. 104 ; Gilchrist vs. Stevenson, 9 Barbour, 9 ; Murray vs. Ballou, 1 John Ch. R., 567 ; Moran vs. Hays, 1 John Ch. R., 339 ; Stephens vs. McEvers, 4 John Ch. R., 135.

And if, in all such cases, the trust will be enforced against the settlor, with much more reason should it be enforced against a trustee who has expressly accepted the trust. The deed of April 2d, 1884, to Pasco and the deed from Pasco back to Mary B. constitute but dependent parts of one and the same transaction, and must be construed together as one transaction. To maintain that they amount to a sale and conveyance within the plain words, or the intent and meaning of the provision of the trust deed now under consideration is to advance the absurd proposition that Mary B. might convey to *herself*, or the equally absurd paradox that she could sell and convey this property without once parting with its possession or beneficial ownership. The deed to Pasco pretends to convey to him only the bare,

naked power to convey this property back to Mary B., coupled with a trust that would compel him so to convey it. This was all he took or could take under the deed. The power of sale and conveyance reserved by Mary B. was for her benefit to enable her to use and enjoy the property and its proceeds, and the exercise of this power could relieve the property from the trust only by vesting it in a party against whom equity would not enforce the trust. This trust deed contains no powers of revocation. No power is reserved to recall the trust, but simply the power to put the property beyond the reach of the trust, by vesting the title by sale and conveyance, or last will and testament, in other parties against whom the trust would not be enforced. But Mary B. died possessed of this property, and without having parted with it by sale and conveyance, and without having disposed of it by last will and testament, and at her death, under the terms of the ante-nuptial deed, it went to her surviving son, Bailey Finlayson, upon whose death, during infancy, it passed under the Statute of descents to the appellants.

Both parties to this controversy now claim by descent. The appellants from Bailey Finlayson, the child of Mary B. that died in infancy, the appelles from Mary B. herself. It is not denied that appellants are entitled to all of the property held by Bailey Finlayson at the time of his death, and derived his mother. The question is, did he take the whole under the ante-nuptial settlement, or only half by descent from his mother in the absence of such settlement? Appellee contends that he took only half under the statute, and admits in his answer and testimony that this half upon his death descended to appellants. Yet in the face of this admission appellants are turned out of court, their bill dismissed at their cost and appellee is not required to account for or surrender to them their property, which admits is in

his hands, and to which he sets up no claim. The bill contains a prayer for specific and for general relief, and even if the court below were of the opinion (and even if correct in that opinion) that the deed of June 21, 1883, was void at its execution, or was avoided by the subsequent deeds of April 2d, 1884, still the bill should not have been dismissed but appellee should have been held to account for and surrender to appellants what he admits he has in his hands belonging to them.

And upon this ground alone, if none other, the decree of the court below should be reversed.

The deed of trust executed on the 21st of June, 1883, by Mary B. Bailey to Daniel A. Finlayson was in consideration of marriage, which is a valuable consideration. 2 vol. Sugden on Powers, top page, 210.

This deed was an ante-nuptial settlement, and if fairly made will under all circumstances be favored and supported by courts of equity. Govin et al. vs. Gordon, et al., 28 Miss., 210, et seq.

· The trusts created by this deed were executed and not executory. Neves vs. Scott, 9 Howard, U. S. R., 197.

These trusts being executed were irrevokable. 2 Wash. Real Prop., 462 ; 2 Myler & Keen, 406, 503 ; 40 Conn., 512 ; 59 Penn. St., 9.

The testimony shows conclusively that the deed of trust was delivered. Sauverbye & Wife vs. Arden et al., 1 John. Ch. R., 240 ; 2 Zabriskie, 311 ; 37 Wis., 601 ; 50 Wis., 322, 327.

The description of the property in the trust deed is sufficient. Hill on Trustees, 74 (marginal page.)

How intention of parties ascertained. 50 Wis., 322 ; 56 Maryland, 327.

Inconsistent clauses in the deed. 55 Miss., 96, 103 ; 4 Kent Com., 349.

Who can correct defective execution of power. 79 Va., 43.

Appellee contends that a court of equity cannot grant the relief prayed for, as it would be equivalent to trying a question of title to real estate and a common law action of replevin as to the personal property. The bill sets up a deed of trust vesting the fee of the real and personal property in Finlayson, to be held in trust for Mary Finlayson during her life-time and at her death to go to any child or children, or their descendants (heirs or assigns) she might leave surviving her. That she died leaving a child surviving, which has since died in infancy; the heirs of which child are the appellants. That Finlayson still has and holds the trust property. It prays a discovery of the trust property and the evidences of title, an account of the rents, issues and profits, and that the trustee be decreed to convey, pay over, and deliver the same to the appellants. We think it is clearly and unquestionable within the jurisdiction and power of a court of equity to grant such relief.

Finlayson alleges that *since* the institution of this suit he has been appointed administrator of the estate of Mary B. Finlayson, and as such administrator is entitled to hold the possession of the trust property to pay debts, &c.

If the trust property be liable for the debts of Mrs. Finlayson, it is nevertheless vested in the appellants subject to such liability, and Finlayson after being sued as trustee cannot evade his liability as such by taking out letters of administration and urging the claims of creditors to defeat the recovery of appellants against himself.

Finlayson further insists that the trust deed was never delivered to him, and that the deed was never intended by the grantor to become operative.

He is the trustee and is estopped from making such defence. He joined in the execution of the trust deed, and

expressly consented to all its terms, and accepted the trust thereby created, and again on the 2d of April, A. D. 1884, he joined in a deed of the trust property to Samuel Pasco, which recites, recognizes and admits the execution of the trust deed of June 21, 1883.

It is further contended that the trust deed of June 21, 1883, was made by the grantor while she was living with her mother, and under the advice and influence of her mother, and that but for such advice and influence she would not have made the deed. That this deed would have been set aside by a court of equity at the instance of the grantor in her life-time, and that consequently equity will not enforce it after her death.

In support of this position appellee cites: Rankin vs. Patton, 65 Mo., 410; Miller vs. Symonds, 72 Mo., 684; Garnsey vs. Mundy, 24 N. J. Eq., 244.

In Rankin vs. Patton, a young woman brought up in Ireland, through the death of a relation in the United States became entitled to a large property. An uncle, her guardian, who was acquainted with the property, without disclosing to her its amount or value, induced her to convey the whole of it to two old aunts, giving as a reason for the conveyance that the property rightfully belonged to the aunts, though the law had vested the legal title in the young lady. The aunts were old and already well provided for—in fact, they were rich, and had no claims upon the gratitude or generosity of the young lady. The property conveyed turned out to be worth over $60,000. The conveyance was purely voluntary. Upon *the grantor's* application against these aunts setting up all the facts, the court set aside the conveyance.

In Miller vs. Symonds, a young lady 23 years of age, living with her father, was about to marry one Miller, to which her father was bitterly opposed. But finding she had de-

termined to marry him, he (the father) and his son (the brother) of the young lady induced her to convey *all* her property to her father, alleging as a reason that the old man might otherwise be turned out of his home. She married and then with her husband applied to the court *against her father* to have the deed set aside, which the court decreed. This conveyance was purely voluntary, and stript the young woman of all her property.

In Garnsey vs. Mundy, an unmarried woman made a voluntary conveyance of all her property upon certain trusts, no counsel was consulted when the deed was made, but the party who drew the deed and those present advised her that she could revoke it at any time she might be so disposed, and that the deed would not prevent her from selling or otherwise disposing of her property. Afterwards finding that she had unintentionally deprived herself of the use and enjoyment of *all* her property and the right and power of disposing of it, she applied to the court and was relieved against the conveyance so unadvisedly and improvidently made.

All these cases differ materially from the case at bar.

1. The conveyances in the cases cited were all *purely voluntary*, and none of them were made or accepted in consideration of marriage. Whereas in this case Finlayson, in consideration of the marriage of the young lady to him, made himself a party to the trust deed, consented to all its terms, and accepted the trust it created.

2. The conveyances in these cases cited all deprived the grantors of the beneficial use and enjoyment of their property, and of the right to sell and convey it and dispose of it by will. Whereas in the trust deed here it was expressly provided that " nothing therein contained should interfere with the free use and enjoyment of the property by Mary B. (the grantor), or with the disposition thereof should she

desire to sell and convey *any part of it*, or dispose of it by will."

3. In each and every of the cases cited the application for relief was made by *the grantor* against the beneficiaries upon the ground that the conveyances were made *without consideration* under *undue* influence (and in Garnsey vs. Mundy under mistake), and that they stript the grantors of their property, its possession, use and enjoyment, and of the right to sell and convey it, and dispose of it by will. Whereas in this case Finlayson, *the trustee*, who for a good and valuable consideration joined in the trust deed, and consented to all its terms and accepted the trust it created, is here asking to be relieved, not only against his deed, but against the trust he has assumed.

Nevin & Wife vs. Gillespy, 56 Md., 326, is cited in support of the position that Finlayson being heir at law of his wife stands in her shoes and will be heard to urge any objection to the trust deed that she could have made. Such is not the doctrine of that case, but on the contrary the rule it lays down is, that the deed of a party binds his heir at law, and that the heir will not be permitted to attack the *bona fides* of such a conveyance. But Finlayson is trustee and cannot divest him of his character as trustee and appear here simply as heir at law of his wife. "He cannot be both trustee and assailant of the trust deed." See Strong vs. Willis, 3 Fla., 124.

It is further contended by appellee that the clause in the trust deed providing "that nothing therein contained should interfere with the free use and enjoyment of the property by Mrs. Finlayson, or with the disposition thereof, should she desire, to sell and convey any part of it or to dispose of it by will," amounts to a retention of the fee in the grantor, that the deed was void *ab initior*, and nothing passed by it, and no trust was created.

We have been cited to no authority in support of this position.

In Blain vs. Muse, decided by Supreme Court of Virginia April 21st, 1887, (see S. E. Rep., p. 31,) the court says: "If a deed conveys to several persons an estate in fee and the grant is followed by a reservation to one of those persons (the grantor's wife) of the power to sell any part of the whole the *reservation* is *void*, because repugnant to the fee simple estate conferred by the deed."

If the clause under consideration is so repugnant to the grant that both cannot stand then the grant must prevail, and this clause will be held void whether construed as an "exception," a "reservation," or as a part of the "habendum." Washburn on Real Est., vol. 3, 367, 434; Shep. Touch., 79.

But the court will, if possible, reconcile conflicting clauses so as to give effect to the whole instrument. And if this clause should be construed as a *proviso* or condition by the performance of which the grantor could terminate the trust and destroy the trust estate, then we enquire if this property *has been disposed of* by *sale* and *conveyance*. The purpose of the trust deed, as stated in the preamble, is "to settle and arrange as to the use and enjoyment of the property and the disposition thereof." The trust deed itself makes "disposition" of the property after Mrs. Finlayson's death, unless under the clause we are considering she *could* make a *different* "disposition" of it, *and* unless under that clause she *has actually* made a different disposition of it. It is shown conclusively that upon the marriage the trustee Finlayson took possession, and that he has ever since had possession, control and the management of this trust property. During Mrs. Finlayson's lifetime they had the "free use and enjoyment of the property." The deed of April 2d, 1884, by Finlayson and wife to Pasco was not a "sale and convey-

ance " to Pasco of the property, but at best a mere *voluntary* transfer of the legal title to Pasco *in trust* to be conveyed immediately back to Mrs. Finlayson, a mere *device* to free the property from the original trust in a manner and by a means not provided for in the trust deed that created the trust which Finlayson, for a good and valuable consideration, accepted. It does not on its face *purport* or *pretend* to be a " disposition " of the property. The grantors never parted with the possession or the beneficial ownership. Pasco pretended to take the title for the sole and only purpose of conveying it back to Mrs. Finlayson, and coupled with an *express trust* that he would so convey it, and he did on the same day and *immediately* convey it back to Mrs. Finlayson. This conveyance to Pasco was an *attempt* not to *execute* a power but to destroy it, and to *defeat* and not to *execute* the trust, and the *trustee* is a party to such attempt and now claims the *benefit* to result to *himself* from a *violation* of the trust which he *assumed* and *bound himself to execute*. And by his cross-bill the trustee asks the court not only to sanction and approve this act but to convert this *wrong* into a *duty* by so reforming the original trust deed as to decree that what was in effect and what was *so intended* as a *destruction* of the power and the trust shall now operate as an *execution* of the power and the trust. We are not advised that courts of equity are organized to give such aid to trustees.

The case of Nevin & Wife vs. Gillespie, 56 Md., 326, cited by appellee as an authority that the deed to Pasco, and the deed from Pasco back to Mrs. Finlayson, destroyed the original trust does not show this; but on the contrary does assert that such a deed was not a " sale and conveyance," but that the grantor and those claiming under her as her heirs at law would not be heard to attack the *bona fides* of such a conveyance, but that any party claiming *adversely*

under the original trust deed *could* make such attack. The appellees here claim *not as heirs at law* of Mrs. Finlayson *but* as heirs at law of *Bailey Finlayson*, who, at Mrs. Finlayson's death, was sole beneficiary under the trust deed. They stand in his shoes, and this controversy is substantially as if it were between Daniel A. Finlayson, the trustee, and Bailey Finlayson the sole beneficiary of the trust, and were this infant in life, and here claiming this property against the trustees, it seems to us that the issue could not be doubtful, and yet the law of the case must be the same.

The trustee by his cross-bill alleges that the trust deed is not such an instrument as the grantor intended to make, and asks that it be reformed so that the deed to Pasco may be held to defeat the trust in the sole interest of the trustee himself. He does not allege any mistake in the trust that he actually accepted, and if any mistake is anywhere alleged it is a mere mistake of legal construction and seems to have been a mistake in the means employed to *defeat* the trust rather than in the instrument *creating* it. The trust deed was drawn by eminent counsel after due deliberation and full and free consultation with all the parties in interest, and was certainly written as the parties then intended that it should be. The facts set up and proven in the light of the authorites cited would not have warranted the relief asked for even if the application had been made by Mrs. Finlayson in her lifetime, and the court will certainly not go to the extent of granting such relief at the instance and in the sole interest of the trustee long after her death.

"Where the instrument was written as the parties intended, and the mistake made was in the legal construction of it, equity will not interfere to rectify it."

See Hicks vs. Coody, decided by Supreme Court of Arkansas, October 22d, 1887, 5 S. W. Rep., p. 714.

*C. P. & J. C. Cooper* for appellee.

MAXWELL, J.: On the 21st day of June, 1883, Daniel A. Finlayson intermarried with Mary B. Bailey. At the time of this marriage the said Mary B. was about 24 years of age, and resided with her mother and step-father, Dr. B. Waller Taylor. She was seized and possessed of real and personal property in her own right, and on the day of the marriage the two joined in the execution of a deed of trust by which she, as party of the second part, conveyed all her property to him as party of the first part, to be held, as the instrument says, "for the following uses and purposes : To have and to hold the same under his charge, control and management for her and their use, benefit and enjoyment during her life time, as provided by the laws of this State relating to the separate property of married women ; and at her decease to go to and descend to any child or children she may have surviving her, and in case of her decease without leaving issue, then to her mother, Maria B. Taylor, for the term of her natural life, and at her decease to go to the brothers and sisters of the said party of the second part herein named, William W. Bailey, John B. Bailey and Martha H. Bailey, to them, their heirs and assigns forever. It is expressly understood that nothing herein contained shall interfere with the free use and enjoyment of said property of the party of the second part, or with the disposition thereof, should the said party of the second part desire to sell or convey any part thereof, or to dispose of it by last will and testament.

" And the said party of the first part has made himself a party thereto in token of his approval of the premises and in acceptance of the trust herein created as aforesaid."

On the first of January, 1884, Mrs. Finlayson addressed a note to S. Pasco, Esq., the counsel who had prepared the

deed, as follows: "Enclosed you will find the settlement which you made last summer, the day of my marriage. Please draw up some paper which will effectually revoke the first paper, as it was made against my will, and I determined at the time it should never stand."

This note, together with the trust deed was carried by Mr. Finlayson to Pasco, who, on the second of April, 1884, prepared two deeds—one by Finlayson and his wife conveying all the property embraced in the trust deed to himself, and one by him conveying the said property back from him to Mrs. Finlayson. Soon after Mrs. Finlayson gave birth to a son, who was named Bailey Finlayson, and on the next day she died intestate. The said Bailey Finlayson subsequently died a minor.

The appellants on the 26th day of March, 1886, filed their bill of complaint in the Circuit Court of Jefferson county against D. A. Finlayson, setting up the validity of the trust deed aforesaid, claiming that under it they were entitled to all the property, real and personal, set forth in the said trust deed, and the rents, issues and profits of the same. This bill was answered by Finlayson, alleging that the deed was procured of his wife, then Miss Bailey, by undue influence of her mother and brother and through duress, and that it was not her voluntary act. He subsequently filed a cross bill, but under the view we take of the case it is unnecessary to refer to it further.

The cause was brought to a hearing upon the original bill, answer and replication, the cross bill, answer thereto and replication and the evidence.

The plaintiffs' claim through the marriage deed of trust is, that the Finlayson child having survived his mother, the property became his, and that the law of descents carries it after his death to them as his heirs on the parental side from which it came. McCl's. Dig. sec. 2, p. 469. The

claim is a good one if it is to be determined alone upon the directions of the trust deed. That deed, however, is attacked by the defendant on the ground that it was made involuntarily and obtained by undue influence of the mother over the daughter on the immediate approach of the marriage of the latter, and is therefore in law not her deed. In that event (not regarding now the subsequent conveyance of husband and wife to Pasco, and his conveyance back to her) the property was still hers at her death, and under the law of descents would go equally to the child and the defendant. And it is further contended for defendant that if the deed is not void, his rights are the same under the subsequent disposition of the property authorized by the deed, by which it again became her property, freed from the trust. In these several propositions, *pro* and *con*, are to be found the solution of the case.

To our minds the evidence seems conclusive that Miss Bailey made the deed of trust against her will, and under the constraint of her mother's influence. That evidence shows that when she executed the deed she was twenty-four years of age ; that she resided with her mother ; that previous to that day she had promised her mother that she would execute a deed ; that it was drawn by Samuel Pasco, Esq., a practicing attorney at the Monticello bar ; that it was drawn upon the application of Mrs. Taylor, the mother who sought him at his residence early in the morning of the day of the mariage　She said to Pasco that no marriage contract had been drawn, and that one must be drawn before the marriage, as it would not do to let the property go out of the family in case of Mamie's death. She was quite earnest in her manner and somewhat excited, and wanted to know of Mr. Pasco if he could not attend to it immediately, and requested him to see Mr. Finlayson about it. She gave him instructions as to what she desired the

deed to be, and the title of the property was to be absolute without any power of revocation, under the instructions. Mr. Pasco saw Mr. Finlayson the same morning, who said nothing had been said to him by the family about the matter, and that he thought it was a late and inappropriate time to bring up a matter of so much importance, and that he did not think that it was Mamie's wish that anything of the sort should be done, and that he would think the matter over and see the instrument when prepared, and then decide what to do.

Later in the day Mr. Pasco went to the house of Mrs. Taylor, who called her daughter, Miss Bailey, down. Miss Bailey appeared to be agitated, and to have been crying. She (Miss B.) asked Mr. Pasco to tell her what was in the instrument; that she did not want to read it, but to tell her what it contained, and she seemed impatient to get through with the interview. She said she wished she had no property to be troubled about. Mr. Pasco informed her of the contents of the instrument, whereupon she enquired of him if it contained any power to revoke it, and told him if there was not she would not sign it under any circumstances. Pasco told her that it did not, but that it could be added, and Mrs. Taylor consented that it should be done. This was about 1:30 o'clock in the day. About the middle of the afternoon Mr. Pasco called again with the instrument ready for execution, containing a clause intended to give her the power of revocation as previously requested by her. The instrument was then read in the presence of Dr. and Mrs. Taylor, Miss Bailey not being present. Mrs. Taylor took the instrument up stairs to show to Miss Bailey, but did not remain long enough to have read it to her. Mr. Pasco then, at the request of Mrs. Taylor,

12

took the paper to Mr. Finlayson for him to examine and see if he was ready to sign it. Finlayson was found in his room dressing. He read the instrument over hurriedly, and said he did not believe it to be Miss Bailey's wish that he should sign it; that she was acting at the request of her mother, and furthermore, it was too important a matter to act upon at such a time as that; that he felt that he ought to protect her own interest, and could not consent that such a matter should be acted upon at that time. Pasco returned to Mrs. Taylor and told her the result of his interview. She called Miss Bailey down and said to her, " see there Mamie, he refuses to sign it," to which Miss Bailey replied: "Oh, mamma, my Danie will sign it if I ask him to do so." Miss Bailey then wrote a note to Mr. Finlayson, which was borne to him by Mr. Pasco. Before Miss Bailey signed the deed she asked if the paper gave her full power to revoke it at any time. Pasco told her that it did, and then she signed it. Mr. Finlayson signed it and the witnesses subscribed their names. This was immediately before the marriage.

The following was the note written by Miss Bailey to Mr. Finlayson a short interval before the signing of the deed: " I trust you fully, but cannot do as you say. I promised mother long ago that it should be so, and cannot refuse. As you love me, sign this paper, and do not add anything more to my suffering, for I have gone through with enough to kill me.

" Do as they wish us to do, and afterwards I will prove my love to you in some other way. You must sign."

On the 2d of April, 1884, the then Mrs. D. A. Finlayson and her husband conveyed all the property embraced in said trust dead of June 2, 1883, to Samuel Pasco, which was on the same day reconveyed by Pasco to her. A few months after making the deed and after her marriage, Mrs.

Finlayson remarked to Mrs. S. J. Turnbull, her sister-in-law, that no one ever went through with more than she (Mrs. Finlayson) did the day of her marriage ; that it was a wonder to her that she lived through it, or words to that effect.

Dr. Taylor, Miss Bailey's step-father, testified that his wife, Miss B's mother, advised Miss Bailey to make the marriage contract, and that she acted upon that advice. That he believed Miss Bailey would not have made it if it had it not been for that advice, as she had every confidence in Mr. Finlayson.

It cannot be doubted that if on this evidence Mrs. Finlayson, after her marriage, had sought to set aside the deed of trust, the court would not have hesitated to grant a decree for that purpose. For the law on the subject, see among the numerous authorities, 1 Story's Ex., secs. 207-8-9 ; Taylor vs. Taylor, 8 How. U. S. 183 ; Huguenin vs. Beseley, White & Tu. Leading Cases in Equity, part 2, p. 1156, and notes ; Hamilton vs. Mohem, 1 P. Wms., 118.

But appellants say that though Mrs. Finlayson could have had the deed set aside, her husband, who joined in it and accepted the trust under it, is estopped from saying it was not a valid deed, and that so far as he is concerned it must stand free from impeachment. As trustee this may be correct, though Hamilton vs. Mohem, *supra*, is authority to the effect that in a case similar to this the husband may have the aid of the court to set aside marriage articles; but passing this, under the statute here, he is also an heir, and in that capacity has the same rights that would enure to any other heir. But let the estoppel be admitted, what then ? The deed contains a reservation that nothing there. in should interfere " with the disposition (of the property) should she (Mary B. Bailey) desire to sell and convey any

part thereof, or to dispose of it by last will and testament." This seems inconsistent with the previous portions of the deed, and repugnant to the grant, but the evidence in the case enables us to give a construction to this language which will conform it to the intention of the parties. It will be seen from that evidence that it was meant as a power of revocation. Miss Bailey positively refused to sign the deed without such a power, and she was told by the attorney who prepared it that this provision gave the power, and the mother consented in the end that it should be put in. Subsequently the same attorney, acting under her request to prepare a paper to effect the revocation, drew the deed from her and her husband to himself, and then the deed from himself to her, it being his and their understanding that through the instrumentality of those deeds the property was fully re-invested in her. He says in his evidence that he prepared the deeds to meet the wishes of Mrs. Finlayson, to effectually revoke the former one, as expressed in her note to him. The objection to this evidence that the deed speaks for itself, and his statements should not be heard to vary or contradict it, is not tenable, for the reason that there is seeming repugnancy in the deed, which it is permissible to reconcile by parol testimony, if the circumstances and the object and intention of the maker of the deed can do this. We think this a case calling for that privilege, and one in which the words used in the deed, though not strictly expressing the purpose, may be made to conform to that purpose. So viewing it, we regard the property as restored to Mrs. Finlayson by the deed from Pasco to her, the same operating as a revocation authorized by the original deed. Treated in this light, there is no occasion to consider the objection of appellants to the deed from Mrs. Finlayson to Pasco, that it was without consid-

eration. As a revocation no consideration was necessary.

A voluntary deed of trust, without power of revocation, will sometimes be set aside, if unreasonable, and improvidently made. See Garnsey vs. Mundy, 24 N. J. Eq., 243, and cases therein cited. The deed of Miss Bailey was a voluntary deed, so far as the beneficiaries of the trust are concerned, and she but did herself what she thought the power authorized, and what, in the absence of the power, we think a court would readily have done for her.

Other questions appearing in the case have been duly considered, but as they cannot affect our conclusion we omit deciding them.

While appellants are entitled to the portion of the child, Bailey Finlayson, in the estate of his mother, after payment of debts, we think the case as it stands does not justify a decree to that effect, and that the court did not err in dismissing the bill. As to the cross-bill, that should also be dismissed, and the costs occasioned thereby should be paid by the appellee.